IN THE

# SUPREME COURT OF TENNESSEE,

FOR THE

# MIDDLE DIVISION.

NASHVILLE, . . . . . . . . . DECEMBER TERM, 1880.

## JOEL A. HAYES *v.* WM. A. CHEATHAM AND WIFE.

1. PLEADING AND PRACTICE. *Evidence. Stated account.* Any writing signed by the debtor, which admits a specific indebtedness with interest, would be evidence of a loan between the original parties, and *prima facie* proof of the common money counts, and would be a liquidated or settled account within the Code, sec. 1945.

2. SAME. *Charge of court.* A circuit judge, who assumes in his charge to the jury as conceded that a certain loan was made by the plaintiff to the defendant, and that payment had been made, leaving a balance due with interest from the date of the loan, in which assumption the defendant acquiesces at the time, cannot be put in error by an objection made for the first time in this court.

3. SAME. *Set-off. Charge of the court.* Where the set-off relied upon by a defendant rests entirely upon contract, although claimed to be on a *quantum meruit* as to the value of the services, the court properly instructed the jury to determine from the proof whether it was agreed and understood between them that defendant was to be paid therefor.

1—VOL. 6.

4. SAME. *Charge of court. Bill of exceptions.* If the bill of exceptions shows that the court, at the instance of the counsel for the defendant, further charged the jury, the whole of the charge thus set out must be taken to have been made at the instance of the counsel, unless the contrary appear.

5. SAME. *Charge of court.* This court will not entertain hypocritical objections to the charge of the trial judge, it being the duty of the litigants, if the language be equivocal, to ask for a removal of the doubt by proper instructions at the time.

6. COMPENSATION. *Gratuitous services.* A person cannot make a charge for services which were gratuitously rendered at the time.

7. EVIDENCE. *Confirmatory statements.* Where the statement of a party, examined as a witness, is attacked by proof of contradictory representations, it is competent to prove that he made the same statement when no motive existed to misrepresent the facts, and the occurrence was recent.

8. PLEADING AND PRACTICE. *New trial.* It is no ground for a new trial that the party had found a letter since the trial which he had looked for without success beforehand, the letter being only useful as containing the address of a person whose testimony might have been taken as a witness, especially if the testimony, as disclosed by the letter, was merely cumulative and containing a statement not true in point of fact.

### FROM DAVIDSON.

Appeal from the Circuit Court of Davidson county. N. BAXTER, SR., J.

A. S. COLYAR and A. E. GARRETT for Hayes.

E. H. EAST and J. C. & J. M. GAUT for Cheatham.

COOPER, J., delivered the opinion of the court.

Joel A. Hayes and Adelicia Cheatham are brother and sister. Prior to the autumn of 1863, she was the wife of Col. A. S. Acklen, and the owner, with her children, of several valuable plantations on the

Mississippi river in the State of Louisiana, which were under the general management of her husband. He died during the summer of 1863, and in November, 1863, she left Nashville, where she resided, and went to these plantations, taking with her Captain B. Dufield, for many years a captain on a steamboat in the Nashville and New Orleans trade, as an agent to assist in removing the crops of cotton then accumulated on the plantation. Her brother, Joel A. Hayes, joined her at Memphis, where he then resided, and went with her to the plantations. The crops were successfully removed during the winter, and she returned home early in the succeeding summer. Her brother remained in general charge of the plantations until about June, 1866, the plantations having, however, been rented, in the autumn of 1865, to third persons, upon a lease for several years, commencing on the first of January, 1866. Her statement is, that he remained under an express agreement that he was to receive $1,000 a year and whatever he might be able to make on the plantations until they could be rented. His contention is, that there was no agreement as to his compensation, but he was to have whatever his services were reasonably worth. He concedes, however, that he never told his sister that he had an account against her for these services until she commenced this litigation by suing him. He further admits that in 1866 he got his sister to discount two notes for him of $1,000 each, and in 1867 he borrowed from her $10,000, for which he gave his receipt in writing, agreeing therein to execute his promissory note for the payment of the

money with interest. No note was ever executed, and the amount of indebtedness was afterwards reduced by some credits.

Adelicia intermarried with W. A. Cheatham, and, on the 17th of January, 1870, Cheatham and wife brought this action against Joel A. Hayes for the money loaned, the declaration containing the common counts. The defendant pleaded *nil debit*, payment and set-off. He admits in his testimony the correctness of the plaintiff's account, and the contest is over the plea of set-off. That plea is, that the said Adelicia became tutrix in the State of Louisiana of her four minor children, and was as such entitled to the administration in that State of the succession of her late husband's estate, and, expecting to be absent from the State, she, on the 15th of February, 1864, did contract with defendant and empower him to act as general agent and attorney in fact, as said tutrix and administratrix, agreeing to pay him reasonable compensation, and that he was entitled to the compensation of $23,623. There is also a general plea of set-off for work and labor done by the defendant for the plaintiff to the amount specified. The plaintiff relied upon the defense of payment to the general plea, and denied the contract upon which the special plea was based. The issues joined were submitted to a jury on the 25th of June, 1875, and after a full and fair trial and due deliberation, the jury brought in a verdict, on the 12th of July, 1875, finding the balance of plaintiff's debt to be $8,031.02, and the defendant's set-off to be $1,800, and the net amount due from

the 'defendant to the plaintiff to be $6,231.02, for which a judgment was rendered accordingly. The defendant moved for a new trial, which motion was overruled. He therefore filed a bill of exceptions, and afterwards, in March, 1876, brought the case up by writ of error.

The evidence embodied in the bill of exceptions filled nearly five hundred pages of closely-written legal cap, and the counsel for the appellant has filed an argument, in writing, in which the facts are carefully and skillfully collated, with a view to show that the finding of the jury was not warranted. The great mass of the testimony relates to the services rendered by the plaintiff in error, both before and after the contract of the 15th of February, 1864, on which he relies. The evidence directly touching the contract between the brother and sister is in a narrow compass, and consists mainly of the testimony of the parties themselves. Each was examined as a witness, and as their respective statements did not accord, it fell within the peculiar province of the jury to decide between them. The jury found for the plaintiffs below, and there is not only no such preponderance of evidence against their finding as would justify the interference of the court, but the preponderance is decidedly in favor of the verdict; and, unless there is some fatal error in the proceedings, the judgment must stand.

The court charged the jury: "If you find for the plaintiff, her's being a settled account, she is entitled by law to interest on the amount from the time it

was due to the present." It is argued that this was error. The account as proven consisted on its debit side of the item of loaned money $10,000, and three small items of $11.75; and on the credit side, of sundry items, amounting to $4,084.76. The defendant himself testified that the account was correct. The large item of debit was proved by an instrument in writing signed by the defendant, dated March 16, 1867, and reading thus:

"Received of Adelicia Acklen $10,000, for the payment of which, with interest, I am hereafter to execute my promissory note according to agreement."

No note was ever executed, but the defendant admitted the correctness of "the account."

The circuit judge commenced his charge to the jury with these words: "The plaintiff sues the defendant for a balance of a loan of $10,000. It is conceded the loan was made, and it is also conceded that payment has been made of a part thereof, and that there remains due to the plaintiff a balance of $——, with interest from the date of the loan."

It is clear from this language—used without objection, and without any request for a different instruction—that there was no contest over the extent of the defendant's liability, the only struggle being over the defendant's set-off.

By the Code, sec. 1945, it is provided that "All bills single, bonds, notes, bills of exchange, and liquidated and settled accounts, signed by the debtor, shall bear interest from the time they become due, unless.

it is expressed that interest is not to accrue until a specific time therein mentioned."

A bill of exchange or promissory note is sufficient evidence of a loan between the original parties, and *prima facie* proof of the money counts: 2 Gr. Ev., sec. 112. An account for money loaned, thus sustained, may well be treated as a settled account signed by the debtor. Any writing admitting an indebtedness, and signed by the debtor, would be equally a liquidated or settled account within the statute, at any rate if, as in this instance, it stipulate expressly for the payment of interest. And a circuit judge cannot be put in error by objection, taken for the first time in this court, to an assumption in the charge, based upon the course of the party in the court below, and acquiesced in by that party at the time as correct.

Upon the plea of set-off, the court said to the jury: "You must determine from the proof whether defendant did any work and labor, or furnished any wares or merchandize to or for the plaintiff at her request, and the amount and value thereof, and whether it was agreed and understood between them that he was to be paid therefor."

The objection taken is to the last clause of the sentence, upon the ground that the defendant's claim is upon a *quantum meruit*, and that if he rendered the services and plaintiff accepted them, she would be bound to pay for them what they were reasonably worth.

No doubt, such is the rule in certain cases where

the acceptance of the benefit ratifies an unauthorized act *ab initio.* But, in this case, the defendant's general plea was for services done at "the special instance and request" of the plaintiff, and upon a particular contract between plaintiff and defendant of the 15th of February, 1864. The defendant's demand, although open as to the value of the services, rests entirely upon contract, and the court properly instructed the jury to ascertain whether there was any such contract between the parties.

The court, at the instance of counsel for defendant, further charged the jury, that if defendant Hayes was employed by Mrs. Cheatham upon a general employment prior to the alleged contract of June, 1864, for the intervening period of time, he would be entitled to recover whatever his services were worth, unless the alleged contract of June was intended to relate back and cover all the time during which he was engaged; but if the contract was intended to cover the whole time, then the price of the services rendered before the alleged contract, would be governed by the terms of the contract.

The objection made by counsel is to the latter part of the clause, commencing with the word "unless," which he says was added by the judge to the previous part, which was made at the instance of the defendant. But the bill of exceptions does not justify the suggestion. As it is written, the whole sentence was added at the instance of the defendant. But the objection is hypercritical. It is to the use of the word intended without adding by both parties. The judge

expressly says, "unless the alleged contract was intended"; and, of course, it could not be intended by the contract unless the intention formed a part of the contract, and was participated in by both. The meaning of the court was plain and could not be misunderstood. And even if it were equivocal, it was the duty of the party to ask for a removal of the doubt at the time.

The same remarks are applicable to the next objection to the charge. The court, at the instance of the plaintiff's counsel, told the jury that if the defendant merely accompanied the plaintiff as a protector and friend, and not with the intention of charging for his services, he could not, after the services were performed, make a charge therefor. The objection is, that the jury have no way of getting at the defendant's intention, except by finding whether or not there was a contract, and therefore the court should have directed them to ascertain from the proof whether there was any contract or agreement between the parties. But the court had, as we have seen, fully instructed them on that very point; and what the judge plainly means is, if you find there was no contract, and that defendant only intended to go with his sister as a protector and friend, he could not, after the performance of services, charge therefor. That a person cannot charge for services rendered gratuitously, is settled law: _Taylor_ v. _Lincumfelter_, 1 Lea, 83.

The plaintiff resisted the defendant's claim upon the ground that from November, 1863, to about the 12th of June, 1864, he was acting as her brother and

friend, and that about the latter date she made an express contract with him for his services thereafter. Her testimony was clear and explicit on these points. The defendant testified that they had made no such contract, and he produced a letter of the plaintiff to. him, dated January 15, 1865, which he insisted disproved the existence of any such contract. The court then permitted the plaintiff to prove, by Capt. Dufield, that, about the time of the alleged contract, plaintiff had told him that she had made such a contract with defendant. The plaintiff in error now objects that the court erred in admitting the testimony of Dufield. This very point has been several times before the court, on the last occasion one of the parties to the suit being the witness whose corroborating statements. were sought to be introduced, and it has been invariably decided that the evidence was admissible: *Dossett* v. *Miller*, 3 Sneed, 76; *Queener* v. *Morrow*, 1 Cold., 11; *Third National Bank* v. *Robinson*, 1 Baxt., 479. The rule is, that where it is attempted to be established that the statement of a witness on oath is a recent fabrication, or where it is sought to destroy the credit of the witness by proof of contradictory representations, evidence of his having given the same account of the matters at a time when no motive existed to misrepresent the facts, ought to be received, because it naturally tends to inspire confidence in the sworn statement. The present case is clearly within the rule.

It is, lastly, insisted that the circuit judge should have granted a new trial upon the affidavit of the

defendant, accompanied by the letter of W. T. Cox, of Groesbeck, Texas, showing what he could prove by him. The letter is dated June 8, 1874, and defendant admits that he had received it in due time after its date, and had it in his possession long before the trial. He had put it into a drawer with other letters, and had overlooked it when he afterwards undertook to find it. But the subsequent finding of it shows that by due diligence it could have been found; besides, the statement of the witness, if produced, would have been merely cumulative, even if entitled to any weight. "I am willing to testify," says Dr. Cox, "that during the time you were removing the cotton I met her (plaintiff), and, in a conversation with her, she referred me to you (defendant) as the party authorized to settle my accounts against the estate of Acklen, and distinctly spoke of you as administrator, and charged with the settlement of the estate." In fact, the defendant was not administrator, and what he did in the settlement of the estate he, himself, contends and tries to prove was as the agent of the plaintiff, and the question comes back to whether there was or was not a contract.

There is no error in the record, and the judgment must be affirmed.