W. T. McColgan *et al.* *v.* Parmelia Langford *et al.*

1. Charge of Court. *Ejectment. Changes of the needle.* In an action of ejectment, where the plaintiff relies upon an old survey, it is not error in the trial judge to call the attention of the jury to the variations of the needle and its constant fluctuations, and to say to them that if the differences in the lines claimed by the litigants can be explained by the constant change of the needle, the jury may look to it in determining the line.

2. Same. *Same. Special verdict.* Where the declaration in ejectment contained one count claiming the land as belonging to two plaintiffs in fee, another count in the name of one of these plaintiffs in fee, and a third count in the name of the other plaintiff as having a life estate, and the plaintiffs conceded on the trial that they could not recover part of land set out in the declaration, it was not error to charge the jury that if they found in favor of the plaintiffs they must ascertain the title they or either of them had, and set out and describe in their verdict the boundaries of the parcels of land recovered from the defendants.

3. Same. *Same. Adverse possession. Actual occupation.* Where the rights of the defendants in ejectment turned upon adverse possession and actual enclosure, there was no error in charging that if the possession was disturbed by the act of war by an army quartering thereon, such interference would not arrest the running of the statute, if it be shown that defendants resumed their actual possession as soon thereafter as they reasonably could do.

4. Same. *Same.* It is the duty of the trial judge to narrow the matter submitted to the jury, in accordance with the express or fairly implied concessions of the parties, so as to lighten their labors and hasten the dispatch of business, and the presumption is that such statements are justified by the course of the party or his counsel, unless objected to at the time.

5. Same. *Same. Conventional line.* Upon the subject of the establishment of a conventional line between adjoining corners of land, there is no error in charging that if the respective owners made a lane between them, and claimed to the lane on either side, the presumption would be that the dividing line was the middle of the lane.

McColgan v. Langford.

6. SAME. *Same. Error immaterial.* In a case where the defendants put in a plea disclaiming title to the land described in the plaintiff's declaration, except certain parcels set out by metes and bounds, although it may be error to say to the jury that if they find a verdict for the defendant, they should further find a special verdict in favor of the defendants for the lands described in their plea, and a special verdict in favor of the plaintiffs for the lands described in the declaration, as to which the defendants disclaimed title, yet it is an error which, upon the general finding in favor of the defendants, could not have prejudiced the rights of the plaintiffs, and the action of the jury in accordance therewith may be treated as surplusage.

FROM JACKSON.

Appeal in error from the Circuit Court of Jackson county. R. A. Cox, Sp. J.

John P. Murray for McColgan.

E. L. Gardenhire for Langford.

Cooper, J., delivered the opinion of the court.

This was an action of ejectment, in which the verdict and judgment were for the defendants, and the plaintiffs appealed in error.

The counsel for the plaintiffs suggests, rather than argues, that the facts as set out in the bill of exceptions do not sustain the verdict. The burden of proof was on the plaintiffs, and we are unable to see that there is any preponderance of evidence in their favor, and there is certainly no such preponderance as will justify this court, under its settled rule, in interfering with the verdict.

The defendants in the plea disclaimed all title to the land in the plaintiff's declaration, except so much

as might be included in the lines of boundary of the
land of the defendants, as given in the plea.   The
boundaries as given in the declaration were those of
a 640-acre tract of land granted by the State of Ten-
nessee on September 29, 1812, based on a survey made
on November 11, 1807, upon a location of the 1st of
November, 1803.   There was, in fact, no controversy
as to the bulk of this land, but only as to certain
narrow slips, supposed to be included therein, on the
line of a tract of land known as the Alterbury tract,
and on the boundary line of the grant.   The plaintiffs
concede, by the bill of exceptions, that the defendants
are protected by a continuous holding, under the
statute of limitations, for the period of twenty years,
to the extent of the land claimed by their plea of
disclaimer, of the strip in dispute on the line of the
Alterbury tract, and on the western boundary of plain-
tiffs' tract.   The contest was over certain strips of
land on the eastern, northern and southern boundaries
included in the enclosures of the defendants.   The
jury found a general verdict in favor of the defend-
ants, thereby holding either that the plaintiffs' lines
did not include the disputed slips, or that the defend-
ants were protected by their enclosures and adverse
holdings.   The burden of proof was on the plaintiffs,
and the testimony, to say the least, leaves it doubtful
both as to the beginning corner of the grant under
which the plaintiffs claim and as to the lines of the
original survey, and especially as to the lines in dispute.
Under these circumstances, and with the verdict of
the jury against them, the plaintiffs must show clear

·error in the proceedings to entitle them to a new trial.

The plaintiffs assign error upon the following charge of the court to the jury, made by the trial judge at the instance of the defendants :

"The court states to you as a proposition announced by Judge Green, in the case of *Gilchrist* v. *McGee*, 9 Yer., 455, 458, that scarcely any two compasses concur precisely in the direction of the needle. Besides, it is matter of science that the magnetic needle constantly fluctuates or changes. If the difference in the lines claimed by plaintiffs and defendants may be explained by this constant change of the needle, the jury may have to [look to it] in determining the place at which the dividing line was run. The precise place where the dividing line was originally run must control, although it might not correspond with the course indicated by the needle. This principle applies to either of the lines in controversy."

The objection to this clause is, in the first place, that it charges as law a proposition of Judge Green merely used in argument in the course of the opinion ·delivered by him in the case cited. But his Honor does not lay down the proposition as law. He is calling the attention of the jury to the variations of the needle with a view to the point of law which he does lay down, namely, that it is the original line as run which must control the rights of the parties, if those rights turn upon the title acquired under the grant, and that they may look to the " constant ·change " of the needle in determining this point. The

proposition of Judge Green was the statement of a supposed fact, not of the law. And the trial judge might, instead of the language of Judge Green, have used the words of the principal plaintiff, as embodied in the bill of exceptions. He says:

"The compass varies, and the magnetic needle has pointed west of the true meridian for the last hundred years, but no two of them point alike. I did not calculate the variation of the needle at the date of the grant or survey. It is constantly fluctuating."

If his Honor had stated the testimony of this witness, as he had the right to do, and said to the jury, if you find from the testimony that no two needles point alike, and that the needle is constantly fluctuating, then I charge you that you may look to the constant change of the needle in determining the place at which the dividing line was run, for it is this place which must control, the charge, it is clear, would have been unexceptionable so far as this point is concerned. It is the "constant change" which the jury must look to, and this change is, it is conceded, matter of science. The fact, as stated by Judge Green, that "scarcely any two compasses concur precisely in the direction of the needle," or, as the plaintiff himself more tersely puts it, that "no two of them point alike," is not one which, under the charge, the jury were required to look to. And if it had been, we cannot see that it could have prejudiced the plaintiffs. The uncertainty of each particular needle might, for aught we can see, have been a fact the consideration of which by the jury was as advantageous to the plain-

tiffs as to the defendants. There was clearly no harm done by its recital.

This particular clause of the charge is said, by the learned counsel of the plaintiff, to be confused and unintelligible. It is obscured by a clerical omission, in the original charge as embodied in the bill of exceptions or in the copy contained in the transcript, of the words "look to," or the word "consider," or some other equivalent expression. Supplying the missing link, as we have done by inserting the former words in brackets, the sense is plain and the law sound. The new transcript, to which our attention has been called since writing the foregoing paragraph, shows that these words were used.

It is next insisted that the court undertakes to state to the jury the real controversy. What his Honor does say is, that when the jury come to the real controversy, they soon learn from the testimony and plats used in evidence, that the conflict between the parties is about certain strips of land in the eastern, northern and southern boundary lines of the plaintiff's tract described in his declaration. The learned counsel tells us in his brief, and his client proves, that the questions in dispute were as to the respective boundaries of the lands of the litigants, and that the conflicts are shown by the diagrams or plats exhibited. And the bill of exceptions concedes, as we have seen, that the defendants had, by adverse possession, a good title to the land included in their plea on the western boundary. Obviously, if there is no controversy on the western boundary, the court might

8—VOL. 6.

safely say that it was limited to the strips of land on the eastern, southern and northern boundaries.

The next error relied on is in reference to the form of the verdict. To understand this part of the charge it is necessary to premise that the plaintiffs are W. T. McColgan and Nancy McColgan, and the declaration contains three counts, the first count claiming the land as belonging to both plaintiffs in fee, the second count as belonging to W. T. McColgan in fee, and the third count as belonging to Nancy McColgan during life. The defendants stated distinctly upon the face of their plea the extent of their claim and possession: Code, sec. 3240. The proof of the plaintiff, W. T. McColgan, shows that the controversy was touching certain strips of land along the boundaries of the tract described in the declaration, and specified in the diagram of plat introduced by him in evidence. Under these circumstances the court instructed the jury that if they found in favor of the plaintiffs they must ascertain the title the plaintiffs or either of them had, and set out and describe in their verdict the boundaries of the parcels of land recovered from the defendants.

The controversy was partly as to the beginning corner of the grant under which the plaintiffs claimed, the calls being clearly insufficient to make a good special entry, and partly as to the lines originally surveyed and marked. In addition, there had been adverse possession by the defendants of portions of the land along the boundary lines of the land claimed under enclosures, which was conceded to be sufficient

to give title along one boundary, and only contested as to the other boundaries. The real controversy was as to these latter strips, which was distinctly stated in the plea of the defendants disclaiming all claim to any of the other land embraced in the declaration. The diagram or plat showed that the lines, which by the calls of the grant were straight, contained, at the time of the litigation, offsets occasioned, perhaps, by adverse possession or conventional arrangements. In an ordinary action of ejectment, and a plea of not guilty, a general verdict may be rendered: Code, sec. 3249. But where the defendant states in his plea the extent of his possession, and the proof establishes the plaintiff's claim to only part of the land mentioned in the declaration, the verdict must necessarily be special. The proof not only showed that the defendants had acquired a good title to part of the land described in the declaration, but the fact is conceded by the plaintiffs in the bill of exceptions. A general verdict would, under these circumstances, have been clearly bad. By the Code, sec. 3250, the judgment must be that the plaintiff recover possession of the premises according to the verdict or the declaration. And if the recovery can only be for a part of the land described in the declaration, the verdict must specify the part: *Rivier* v. *Pugh,* 7 Heis., 715. And in view of the different interests claimed by the plaintiffs, and the verdict rendered, it was not error, of which the plaintiffs could complain, to instruct the jury to ascertain by verdict the title of the plaintiffs, in the event they found a verdict for them or either of them.

Upon the subject of adverse possession without title, the court properly said it must be by actual enclosure, and added : .

" If such possession was disturbed by the act of war by an army quartering thereon, who burned the fence, such interference . would not arrest the running of the statute, if it be shown that the defendants resumed their actual possession as soon thereafter as they reasonably could do."

This clause in the charge is excepted to, but surely the temporary destruction of the fences by an army, or an accidental fire, would not arrest the running of the statute, if the fence be replaced in a reasonable time. If the plaintiffs desired a fuller charge on the subject they should have asked for it.

The trial judge, after charging the jury upon the conflict between the parties on the other boundaries, comes to the controversy touching the eastern line, the strip there claimed by the defendants having been recently enclosed, and being, as he says, the only real line of contention. He tells the jury that if they find that the original line of the survey running north from the river leaves the new fence entirely on the side of the defendants, the plaintiffs' action must wholly fail. This is objected to. But His Honor plainly means, if you find the other matters of dispute about which I have charged you, in favor of defendants, and also this, the real matter of contention, also in their favor, the plaintiffs' action would wholly fail. It is not objected that the trial judge treated the contest on the ast line as the real subject of contention, and the

other matters of conflict as virtually abandoned by the attorney for the plaintiffs in his closing arguments. We have held at this term that it is the duty of counsel to object to such statements when made, the presumption being, otherwise, that they were justified by the course of the party or his counsel: *Hays* v. *Cheatham*, 6 Lea, 1. It is the duty of the judge to narrow the matters submitted to the jury in accordance with the express or fairly implied wishes or concessions of the parties, so as to lighten their labor and hasten the dispatch of business.

After charging fully upon the right of adjoining owners of land to establish a conventional line between them, about which part of the charge there is no exception, the court said: " If the respective owners made a lane between them, and claimed to the lane on either side, the presumption would be that the dividing line was in the middle of the lane." The objection made to this clause of the charge is not well taken.

The court instructed the jury that if they found a verdict for the defendant, they should further find a special verdict in favor of the defendants that they have title to the lands described in their plea, and a special verdict in favor of the plaintiffs to the land described in the declaration as to which the defendants by their plea disclaimed all title. His Honor thought that this should be done in order to quiet their titles and prevent litigation, and was justified by the provisions of the Code. The jury having found a general verdict in favor of the defendants, did accordingly

McColgan *v.* Langford.

find special verdicts in favor of the respective parties as directed. The result of a general verdict for the defendants upon a plea distinctly defining the possession, and disclaiming all interest in the residue of the land described in the plaintiffs' declaration, is to settle. the rights of the parties, as between themselves, in accordance with his Honor's suggestion, and if the special verdicts are strictly in conformity with the plea and disclaimer no harm is done, and future litigation may be prevented. In the written argument submitted by the plaintiffs in error, no objection seems to. be made to the special verdicts and the judgment thereon. And if the parties choose to affirm the judgment in all respects, the court will not object. We fear, however, that neither the Code nor the practice. of the court justifies such special verdicts, where there. is a general finding in favor of the defendants. There was error, therefore, in so much of the charge and. the proceedings had in conformity with its directions. It is clear, however, that no person has been prejudiced in his substantial rights by the charge or the. verdict, and that part of the case may be treated as. surplusage: *Fowler* v. *Nixon,* 7 Heis., 730.

If the plaintiffs prefer, the affirmance will be simply· of the judgment in favor of the defendants.