# LLEWELLYN v. CITY OF KNOXVILLE.
## —232 S. W. (2d) 568.

Eastern Division. At Knoxville. March 13, 1950.

Petition for Certiorari denied by Supreme Court, August 31, 1950.

634

Taylor & Badgett, of Knoxville, for plaintiff-in-error.

R. L. Carson, C. W. Key and J. M. Meek, all of Knox-ville, for defendant-in-error.

SWEPSTON, J. This is an appeal in error by plaintiff below, Llewellyn, from an adverse judgment in a personal injury suit against the City of Knoxville.

On March 16, 1948, the plaintiff filed his two-count declaration against the defendant, seeking to recover $25,000.00 damages for personal injuries. The factual situation alleged was that on February 16, 1948, the plaintiff was a pedestrian upon a foot bridge constructed and maintained by the defendant for pedestrian travel on North Broadway across First Creek, when this foot bridge collapsed and precipitated the plaintiff into the ravine below, inflicting upon him the injuries complained of.

The first count of the declaration alleges certain specific acts of common law negligence in the construction and maintenance of the foot-walk, such as inadequate construction, improper upkeep and maintenance, lack of proper inspection, failure to barricade, and failure to post "load limit" signs.

The second count alleges that said walk-way in its improperly designed and weakened condition "was such a menace as to constitute a nuisance, and that said nuisance was created by the habitually negligent and wanton operation, supervision and maintenance of said sidewalk and walk-way, in that defendant knew, or by the exercise of reasonable diligence and ordinary care, should have known, that such sidewalk and walk-way was being maintained and allowed to carry pedestrian traffic while in such an unsafe and extremely dangerous condition; and notwithstanding such facts, the defendant failed and refused to abate such nuisance, but on the contrary, permitted and invited the pedestrian public, including plaintiff, to use said walk-way and sidewalk in its unsafe and extremely perilous and dangerous condition . . .".

Defendant having been ordered to plead its real defense, filed ten pleas, of which only the following are now relevant.

"1. A plea of not guilty.

"2. A denial that defendant created or maintained a nuisance at the place alleged in the declaration.

"4. A denial that defendant had either actual or constructive notice of any defect in the walk-way in question.

"5. That no negligence on the part of the defendant was the proximate cause of plaintiff's injury.

"6. That the proximate cause of plaintiff's injuries was the negligence of one Ralph Underwood, who lost control of his automobile and ran the same across and over the walk-way in question, thereby damaging the walk-way and rendering it unsafe and dangerous, this incident occurring less than thirty minutes before the collapse of the walk-way.

"7. That plaintiff's injuries were proximately caused by the intervening and superseding negligence of a third party, for whose acts and negligence the defendant was not answerable.

"8. That plaintiff was guilty of proximate contributory negligence.

"9. That plaintiff was guilty of contributory negligence."

Plaintiff joined issue on all pleas, after his motion to strike and his demurrer to certain pleas had been overruled.

There was a jury trial and at the conclusion of all the evidence the Court granted defendant's motion for a peremptory instruction on the nuisance count and submitted the case to the jury on the first count, on which a verdict for defendant was rendered.

Plaintiff's motion for a new trial was overruled and he has appealed and assigned error.

The assignments go to the action of the court on the nuisance count, to the giving or the refusal of certain instructions to the jury, and to the rejection of certain testimony. There is no assignment to the effect that there is no evidence to support the verdict.

It is, therefore, unnecessary to review the evidence fully, because the verdict of the jury on the first count has settled the questions of negligence and contributory negligence and, as we shall later show, the question raised by the first assignment as to the directed verdict on the second count.

A brief statement to give a picture of the scene and the incident may be helpful.

In 1903 the City built a concrete viaduct for vehicular traffic where North Broadway crosses First Creek. It is 107 feet long and in the center section immediately over the creek it has solid concrete banisters; from the ends of the banisters to each end is a low concrete curb with upright metal pipes connected by a horizontal rail imbedded in the concrete.

In 1926 the walkway was constructed on the west side only by attaching the same to the concrete wall of the bridge which is a solid facing except the oval arch through which the creek runs. This was accomplished by inserting I-Beams horizontally into the concrete wall slightly below the bridge floor level and extending them out about five feet, on which wooden sleepers rested as a support for the floor boards. About seven feet below the I-Beams angle irons were anchored in the wall and extended outward and upward so as to make contact with the outer ends of the I-Beams and extend upward high enough to serve as support for the wooden guard

rails. Each angle iron was fastened at the lower end by an expansion bolt and to the I-Beams by two half inch bolts. There were six of these bracket or cantilever structures supporting the board walk and at each end it was supported by masonry. The wooden guard rail was supported at each end of the structure by wooden posts nailed to the outer sill.

There was evidence that when new the structure was capable of supporting four or five times the weight of the maximum number of pedestrians that could stand on the available square-footage. During continuous use over the years until this accident on February 16, 1948 nobody had been injured on it. About four-thirty that afternoon two automobiles collided at the south end of the bridge causing the one driven by Underwood to veer offi northwestwardly, jump the low concrete curb, cross the walk-way and fall into the ravine. Plaintiff sought to show that it did not strike any of the cantilever structures, while defendant's evidence was that it tore an angle iron loose and bent the I-Beam, causing the walk-way to tilt downward.

In about a half hour a crowd of 75 to 100 spectators gathered on the walk-way to view the car in the ravine, among whom was the plaintiff. Suddenly the south half of the walk-way gave way and precipitated about thirty people including plaintiff into the ravine and seriously injured him.

Assignment II complains of the charge to the jury of defendant's theory of two intervening proximate causes, to wit, the act of Underwood in crashing across the foot-walk and the overcrowding subsequently by the spectators, because, it is said, defendant did not specially plead the overcrowding.

Code Section 8729 provides:

"Any pleading possessing the following requisites is sufficient: (1) When it conveys a reasonable certainty of meaning; (2) when, by a fair and natural construction, it shows a substantial cause of action or defense."

Section 8730 provides: "If defective in the first of the above particulars, the court, on motion, shall direct a more specific statement; if in the latter, it is ground of demurrer.

Plaintiff did not move to make plea #7 more specific. He did demur but only on the two grounds (1) that the plea failed to negative concurring negligence and (2) failed to aver that the negligence of Underwood was the sole proximate cause. The demurrer was overruled and no error is assigned thereto.

Plaintiff then joined issue on the plea, went to trial and made no objection until after an adverse verdict when he made it a ground of his motion for a new trial.

Code Section 8767 relating to pleading specially simply provides: "And no matter of defense not pleaded shall be shown in evidence;".

This is identical with the language of the Code of 1858, Section 2916, and of 1917, Section 4637.

Plaintiff himself was the first to testify to the number of spectators on the walk-way, stating there were not more than thirty on the two sections which fell R. 16——. Others testified to 75 to 100 being on the entire walk-way, all without objection by counsel for plaintiff.

In Nashville & C. Railroad Co. v. Conk, 58 Tenn. 575, defendant in trespass on the case plead not guilty and gave notice, under Sections 2913-2915 of Code of 1858, that "he will rely upon the following defenses—and among the number is the following: '4th. That the plaintiff's action is barred by the statute of limitations.' " No exception was taken to the sufficiency of the notice.

The proof disclosed the date of the transaction and when the cause of action accrued.

The Court deeming the notice of defenses insufficient (under Section 2915 of the Code of 1858 which is now omitted from the present Code due to the modification of the requirements) of his own motion charged the jury to disregard this defense.

Held, error; that while the notice was not sufficient because not stated with the certainty required of a plea, yet it was notice of a good defense defectively stated; that any action to cure it should have been required before the trial, thus affording defendant an opportunity to amend, rather than afterwards when it was too late to amend.

In Winn v. Fidelity Mutual Life Ass'n., 100 Tenn. 360, 47 S. W. 93, in an action upon a life insurance policy defendant plead "not guilty". After verdict and on appeal the unsuccessful plaintiff first raised the question of the sufficiency of the plea. Held, objection after verdict comes too late; that every fair and reasonable intendment will be indulged in to support a verdict.

We do not think these decisions are affected in any way by later cases such as Hammett v. Vogue, Inc., 179 Tenn. 284, 165 S. W. (2d) 577; Wolfe v. Vaughn, 177 Tenn. 678, 152 S. W. (2d) 631; Provident Life & Accident Ins. Co. v. Prieto, 169 Tenn. 124, 83 S. W. (2d) 251, in which the particular defense was not plead at all.

The instant case was tried by defendant on this theory in part, there was no objection to the evidence, and the Court so understood it.

We, therefore, think there was no error in respect to this part of the charge.

Assignments III, IV, V, VI, VII, IX, X all complain in whole or in part of the refusal of the Court to charge with

reference to concurring negligence of defendant and of Underwood.

It will be noted particularly among other things that the request or such a charge was not made until after the jury had retired and after deliberating for some time had returned for clarification of instructions already given.

The declaration is cast solely on the theory that the walk-way was inadequately constructed in 1926, had been negligently allowed to go without proper repairs so that the iron supports and bolts had become eaten by rust and the wooden parts had been left unpainted and unprotected so as to have become decayed and eaten by termites, leaving the structure in such condition that it would not support any weight so that when plaintiff was in the act of crossing it in the usual way, as he had been doing over the years, it suddenly collapsed under him.

Nothing is averred in regard to the automobile collision a half hour before the collapse, nor as to the car of Underwood having run across the walk-way, nor as to the crowd of spectators coming on the walk-way.

The negligence of the City is the only proximate cause to be gleaned from reading the declaration.

These two supervening facts, however, were brought out by the testimony of the plaintiff's and then of the defendant's witnesses.

The plaintiff sought to show that the car did not damage the walk-way substantially, by attempting to convince the jury that it went across the walk-way near the south end where no angle irons extended up vertically and that it did not strike or loosen any of the supporting iron, but only knocked the wooden upright posts and wooden guard rails on those posts. In other words, that

the City was negligent and there was no independent intervening proximate cause of the collapse of the bridge.

His Honor so charged the jury.

He then charged the defendant's theory to the effect that the City was guilty of no negligence, but, if it were the proximate cause was the two intervening occurrences of the damage to the bridge by the car and the spectators crowding on it, and contributory negligence of plaintiff.

Having then charged generally and specially as to the law applicable to the case, the Court asked for special requests.

Plaintiff tendered thirty-one special requests, of which all were refused except the first one, which is not here material.

The record shows that the eleventh one was "Refused. Not requested. J. M. Kelly, Judge."

This is quoted in Assignment III as follows:

"Gentlemen of the Jury, I charge you that where an injury results from two concurrent causes, if the defendant is chargable with one of the causes, it is no defense in a suit against said defendant chargeable with one of the causes that such other party other than the plaintiff contributed to the injury."

The refusal to give this instruction seems to be explained by what occurred next day, after the jury had retired, had deliberated until 4 P.M., had returned the next morning and had resumed deliberation until 10:30 A.M. when they returned into Court to have a portion of the charge re-read appertaining to two questions in their minds (1) what constitutes a crowd and (2) what would amount to substantial damage to the walk-way by reason of the car striking it.

After extended discussion of those questions by the Court and counsel, plaintiff's counsel raised the question of concurring negligence of the City and of Underwood.

We think the record fairly reflects that Mr. Taylor expressly stated to the Court before the jury was charged that plaintiff was not relying on concurring negligence and that his colleague, Mr. Badgett, remained silent when he should have spoken. The statement of the latter, page 1292 R., that the Court did not require a "stipulation" is not adequate to meet the situation.

In Hamilton v. Carter, 14 Tenn. App. 337, the Court stated in charging the jury that under the circumstances it was not necessary for him to charge as to preponderance of the evidence, and that he would not do it, unless counsel specially requested it.

On motion for a new trial this omission was assigned as error and counsel for the motion filed his affidavit that "he neither by word of mouth, nodding of head nor in any other manner assented, or dissented to or from the aforesaid action of the trial judge."

Counter-affidavits were filed.

On appeal, the Court held, "The finding of the trial judge is conclusive if there is any evidence to support it. Raine v. State, 143 Tenn. 168; 172 (syl. 15), 226 S. W. 189."

It was further urged by counsel that the court should have so charged without any special request.

The opinion, citing the authorities laying down the rules as to when a charge or a failure to charge is reversible error, said:

"But we think that his express assent, or even silence waived any error that may have been committed in this respect."

Also:

"For otherwise his conduct would operate as a fraud upon the Court. A judge may well narrow the matters submitted to the jury in accordance with the express or fairly implied concessions of the parties, so as to lighten the labor of the jury, and hasten the dispatch of business. Hayes v. Cheatham, 74 Tenn. 1; McColgan v. Langford, 74 Tenn. 108; Malone v. Searight, 76 Tenn. 91, 94."

Reverting back to the fact that request #11 appears to have been tendered before the case was submitted to the jury, we think that the foregoing shows clearly that when the Judge was handed the thirty one requests for plaintiff he had been definitely led to believe through conduct of counsel that they were not relying on concurring negligence. Hence, his notation, above quoted, "not requested". There is nothing in the record to show that any objection was made, or his attention called, to his refusal at that time.

This brings us down to the request made after the case was submitted and the jury had returned for repetition of the instructions on the two questions above stated.

Numerous cases hold that special requests must be "seasonably" presented. They must be presented, in Tennessee, after the original charge and if handed to the Judge prior thereto, his attention must be called to them after the original charge. Chesapeake O. & S. W. Railway Co. v. Foster, 88 Tenn. 671, 13 S. W. 694, 14 S. W. 428; Southern Ry. Co. v. Black Diamond Collieries, Inc., 9 Tenn. App. 225.

Likewise they must be presented before the jury retires to consider their verdict.

It is not error for the judge to refuse to call back the jury for special requests, but the requirements of the

rule are not absolute, and the Judge may, in the exercise of a sound judicial discretion, waive the rule.

His exercise of such discretion, however, will not be disturbed, except on an affirmative showing of an abuse. of same. Hemmer v. Tenn. Elec. Power Co., 24 Tenn. App. 42, 47, 139 S. W. (2d) 698, and cases cited.

We find no evidence of an abuse of discretion in this case in his refusal to give requested instruction #11 after the jury had returned for clarification of other points.

Finally, although the instruction tendered is a correct general statement, it is not strictly accurate for the reason, if for no other, that it omits the word "proximately" before the words "chargeable" and "contributed".

The refusal to give an inaccurate special request is not reversible error. Yellow Bus Lines v. Brenner, 31 Tenn. App. 209, 213 S. W. (2d) 626.

We, accordingly, overrule all assignments of error, or parts thereof, predicated on the failure of the Court to charge concurring negligence.

Assignment VI complains of the part of the charge where the Court said: "It is immaterial so far as the car driven by Underwood is concerned whether Underwood was drunk or sober."

It is said that the effect of this was to eliminate from consideration by the jury the question of concurring negligence. We have already disposed of this question adversely to plaintiff.

The Court was speaking with reference to the defendant's theory of intervening, independent and efficient cause and correctly stated the law. The intervening cause might be either a negligent act or a nonnegligent act of somebody else, an act of a child, a lunatic, or

an act of God. It may be any act not produced by the original negligent person.

Assignment VII has already been disposed of under the discussion of concurrent negligence.

Assignment VIII complains of the failure to charge request #28. This request is defective in that it omits the word "not" preceding the words "produced by the wrongful act or omission but independent of it, and adequate to bring about the injurious result." R. 1280.

Assignment IX complains of the language of the Court after the jury had come back for repetition of the instructions on the two questions heretofore referred to.

"Juror Voorhies: The point of the question is sufficiency of the damage caused by the automobile.

"The Court: Sufficiency? Do you mean the extent?

"Juror Voorhies: The extent.

"The Court: The extent of damage?

"Juror Voorhies: Sufficient damage to cause it to be the proximate cause for the collapse of the structure.

"The Court: As I instructed you earlier today gentlemen if you should find from the evidence that the car damaged the bridge *in any degree* that caused it to collapse or *proximately contributed* to the collapse of the bridge." R. V., 1324-1325. (Emphasis supplied.)

■ These expressions "in any degree" and "or proximately contributed", when taken out of the context of the entire charge and of the question about damage that the Judge was attempting to answer, are inept and not correct. But it must be noted that the Court had already fully and correctly charged the jury, consuming 34 pages of the Record, had stated the theory of plaintiff that the walkway fell solely because of its neglected condition, had stated the theory of defendant that the intervening acts of others were the sole cause, and that if the City

had been negligent, it only created a condition and not a cause, had not charged anything with reference to concurring negligence, and had fully and accurately charged on intervening, independent and efficient cause.

Now, just prior to the use of the above expressions, Court and counsel had had an extended discussion on how to answer the jury's question about how much damage had to have been done by the car to make it a proximate cause.

The Court then repeated in substance the charge and in effect told the jury that they should find whether the bridge collapsed solely because of the negligence of the City; or did it fall because the car struck it and damaged it to any degree that the jury would deem to be the proximate cause or proximately contribute to its collapse. R. 1318 et seq.

·When he had finished he inquired if that answered their question. The foreman replied: ''I think none of us is confused in any way.'' R. 1322.

After the jury had retired for a while, they returned and the foreman said one of the jurors wanted to know about ''Sufficient damage to cause it to be the proximate cause for the collapse of the structure.'' .R. 1324. This is when the Judge used the language quoted under this assignment.

In the final analysis the Judge simply told the jury that they had to find one or the other theory; that if they could not say which act caused the bridge to fall— the negligence of the City, or the intervening acts, they must find against the party who had the burden of proof on the whole case—that is, the plaintiff.

We find no reversible error and overrule the assignment.

Assignment X is overruled for the reasons stated under the discussion on concurrent negligence.

 Assignment XI complains of the exclusion of a portion of the deposition of Walter Smith in which he testified that at the time the walkway was constructed he told the City Engineer it was unsafe and would fall if ever loaded to standard loading.

It is said that this fixed notice on the City that it was an unsafe structure.

This may have been Smith's opinion but it was not evidence of any *fact* whatever. The City Engineer was entitled to his opinion which was the opposite of Smith's. The only possible notice to be derived would be that one man opined that it was unsafe, while others held the opposite view.

We find no error and overrule the assignment.

Assignment I complains of the directed verdict for defendant on the second count—nuisance.

 We think plaintiff was entitled to have this count submitted to the jury for exactly the same reason the first count was submitted and it was error to direct a verdict. We think, however, it was harmless error for the reason that the same issues were involved on both counts and the answer of the jury had to be the same on both.

It is unnecessary to discuss the question of nuisance at great length.

 Absolute nuisances, or nuisances per se, do not depend upon negligence, although negligence may exist. The nuisance consists of the harmful effects or the danger of the thing, such as noxious odors, loud noises, unauthorized obstructions in streets and highways, etc., which exist even though due care has been exercised in the creation of the thing. Contributory

negligence is not a defense, although some cases hold that gross negligence may be, on the principle of acceptance of the risk of a known danger.

██ However, a lawful, authorized thing may become a nuisance ab initio or subsequently, because of negligence in design, construction or maintenance.

Such are city streets and bridges or walkways constituting a part of the public way.

██ In this type of nuisance, negligence is the gist of the action carrying with it the general rules of negligence, and contributory negligence as a defense. Johnson v. City of Alcoa, 24 Tenn. App. 422, 427, 145 S. W. (2d) 796; Yarbrough v. Louisville & N. R. R. Co., 11 Tenn. App. 456, 469.

██ A municipality does not have the absolute duty to keep its streets safe. It does have the absolute duty to use ordinary care under the circumstances to keep them in a reasonably safe condition for persons traveling in the ordinary modes, while exercising reasonable care and caution. Swain v. City of Nashville, 170 Tenn. 99, 92 S. W. (2d) 405, and cases cited.

The proper issues under either count being the same and having been submitted to the jury under the first count and decided by the jury should not again be tried, unless there be reversible error in the trial as conducted. We think there was none and accordingly overrule all assignments of error and affirm the judgment with costs against plaintiff.

Anderson, P. J., and Baptist, J., concur.